Bernard J. Rosen/S.B. No. 41538
Beverly Hills Law Building
424 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (310) 203-9600
Fax: (310) 203-9696
e-mail: bernardrosenlaw@aol.com

Attorney for Defendant
DIONICIA ROMAN

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIONICIA ROMAN,<br><br>Defendant. | No. CR 22-312-MWF-02<br><br>**Notice of MDC Refusal to Accept the Court's Order that Defendant Roman Be Housed at MDC LA Because of Health Issues and Request for Further Hearing on the Issue; Declaration of Counsel** |

Defendant Dionicia Roman, by and through her attorney, Bernard J. Rosen, hereby files a Notice to the Court of the refusal of MDC LA to accept the Court's Order (doc. 269) that she be transferred to, and detained at, MDC LA because of health issues.

This notice and the application for a further hearing is based on the attached declaration of counsel.

Dated: December 16, 2022         Respectfully submitted,
                                 /s/ Bernard J. Rosen
                                 BERNARD J. ROSEN
                                 Attorney for Defendant
                                 DIONICIA ROMAN

1

DECLARATION OF BERNARD J. ROSEN

I, Bernard J. Rosen, declare as follows:

1.      I am an attorney duly authorized to practice law in the State of California, I am a member of the Court's CJA Trial Attorney Panel, and I have been appointed to represent defendant Dionicia Roman in this case, as well as the 'related' case, *United States v. Soria, et al*, number CR 22-335, which case has also been assigned to this Court.

2.      On November 14, 2022, this Court signed an Order that the United States Marshal's Service transfer defendant Roman from the Santa Ana City Jail, where she was then being detained, to be housed at the Metropolitan Detention Center in Los Angeles. (Doc. 269.) The Court signed the Order upon my filing of an ex parte application, which I requested be filed under seal, explaining to the Court the many health issues defendant Roman had been diagnosed suffering with and how those conditions, seemingly being untreated at the Santa Ana City Jail, were interfering with my ability to communicate with her and provide her the effective assistance of counsel to which she is entitled.

3.      Believing that it would likely take a few days for the Order to be communicated to all of the necessary parties and for the transfer to take place I waited several days before checking with the Marshal's Service as to whether the transfer had taken place yet.

4.      On November 23, not finding her name on the roster of inmates at MDC LA, I sent the Marshal's Service an e-mail asking if they could tell me when Ms. Roman would be transferred, attaching a copy of the Court's Order to it. They responded within an hour advising me that they were still "working on" the request but had not yet been able to accomplish it and that they would notify me as soon as she had been moved.

5.      Ten days passing without receiving further word, and finding that her name was still not on the roster of inmates housed at MDC LA, on December 2, I

sent another e-mail to the Marshal's Service requesting information about when she might be transferred. On this e-mail, however, I explained that my request had not been made simply as a matter of convenience but, rather, because of health issues Ms. Roman was suffering with which, I had advised the Court, she did not seem to be getting treatment for at the Santa Ana jail and which conditions were, therefore, interfering with my ability to represent her.

6.  This time I received another prompt response but of an entirely different nature. I was first advised that the Marshal's Service would seek an "update" from MDC and let me know when they could transfer her. But within an hour of that response I received another, in the form of a "secure message" from the Department of Justice.

7.  That "secure message" was an attached chain of e-mails between the Marshal's Service and a senior attorney at MDC, written, obviously, after I had recontacted the Marshal's Service inquiring for a second time when Ms. Roman was going to be transferred to MDC and explaining that the request had been based on her health issues.

8.  The last page of that chain was an e-mail from a 'senior attorney' at MDC to AUSA Damaris Diaz, with a copy to the Marshal's Service [which, as I have just explained, that office forwarded to me], asking AUSA Diaz to file a motion with the Court asking it to vacate its transfer Order. The reason given for that request, I submit, is rather shocking.

9.  MDC LA does not want to accept Ms. Roman as an inmate, AUSA Diaz was being advised, because she was too unhealthy to be accepted! She is, the e-mail described: "MEDICAL CARE LEVEL 3 with multiple complicated medical issues … and will need frequent providers visits and f/u (as CARE LEVEL 3) besides frequent outside visits to multiple specialists …." (Emphasis in original.)

10.  Most of what I know of the medical care and facilities at MDC LA is contained in a book entitled "Alan Ellis' Federal Prison Guidebook, Revision 5," published in 2019 by James Publishing, a well-known publisher of legal materials. Amongst its contents are six chapters, covering the six "regions" the Bureau of Prisons has divided itself into, briefly describing each BOP facility in each region and summarizing what services each provides to its inmates assigned there.

11.  One of the facilities described in the chapter covering the "Western Region" is "MDC Los Angeles."

12.  As with every other facility in every regional chapter, there is a brief description of the "Health Services" available there. For MDC Los Angeles those services are described as follows:

> The institution is staffed by three physicians, eight physician assistants, two dentists, and one pharmacist. Inmates are provided with outpatient care. A small infirmary is available. Pill line is available three times a day, seven days a week. The institution is served by a Veteran's Hospital (located next door). Medical staff is on-site 24 hours a day, seven days a week.

13.  In addition to the Veteran's Hospital next door, I am informed and believe that inmates needing such care can be transported to, and cared for at, White Memorial Hospital, just a few blocks distant from MDC LA. I presently have one male client detained at MDC, detained for over two years while waiting for his trial to commence, who, I have been advised, has twice been cared for at that hospital, the second time, earlier this year, for a period of two weeks. In addition, many years ago I was escorted to that hospital by the Marshals Service to visit another male client who had been taken there for his health needs.

14.  I believe that the MDC legal representative who requested that AUSA Diaz seek to have this Court's Order vacated is expressing nothing more than the institution's preference that it not be required to house defendant Roman because of her health needs, rather than its inability to provide for them. Worse,

now knowing her "Care Level," the institution seems to care nothing about the fact that the Santa Ana City Jail seems to have no ability to provide her any level of care she may need.

15. Upon being provided a copy of that e-mail chain, I then sent an e-mail to Eli Ben-Shmuel, who I believe is the head of the legal department at MDC LA, requesting that he and I discuss the matter further to see if a solution could be reached. It's been over a week and he has not responded.

16. At the present time, my client remains housed at Santa Ana City Jail. I have not been down there since I last requested that the Court Order her transfer to MDC LA and it may that on any given occasion she might agree to meet with me in a 'contact' attorney room there – or she might continue to refuse. But, at least, now we know for a fact that she has significant health care needs.

17. If she had already been convicted of any of the charges she is facing and was ordered imprisoned, surely the BOP would be obligated to assign her to one of its institutions where those health needs could best be taken care of. Prior to being convicted, while presumed innocent of those charges and constitutionally entitled to the assistance of counsel in preparing and presenting her defense, I would think that the BOP is similarly obliged.

18. Prior to filing this Notice I have provided a copy to AUSA Diaz and she has asked me to add the following comment as the government's position:

> "AUSA Diaz has advised me that, before filing a motion to vacate, she has been attempting to work with the U.S. Marshals to determine an appropriate placement for Ms. Roman. As of this morning, USMS indicates that Santa Ana City Jail is not aware of any medical issues of defendant that they cannot accommodate. The government plans to file a motion seeking to vacate the Court's November 14, 2022 Order transferring defendant to MDC, and will fully set forth its position in that motion. However, the government does not oppose defendant's request for an in person hearing on this matter."

I am, therefore, asking the Court to hold a hearing, as soon as possible, at which an MDC LA legal and/or medical representative should be present, as well as, if necessary, a representative of the Marshals Service, and certainly a

representative from the Santa Ana City Jail to provide the Court with information concerning what services they can provide to an inmate with "MEDICAL CARE LEVEL 3 with multiple complicated medical issues …."

I will have defendant Roman sign a Waiver of Appearance (CR-35) and have it filed prior to the date of any hearing the Court may Order so that she need not be transported to Court.

I declare under penalty of perjury that all of the above is true except as to those matters stated on information or belief and as to those matters I believe them to be true.

Executed this 16th day of December, 2022, at Beverly Hills, California.

/s/ Bernard J. Rosen
BERNARD J. ROSEN